85 N.J. Super. 528 (1964)
205 A.2d 445
POPULAR REFRESHMENTS, INC., A CORPORATION, PLAINTIFF-APPELLANT,
v.
FULLER'S MILK BAR AND RECREATION CENTER, INC., ETC., ET AL., DEFENDANTS-RESPONDENTS, AND TOWNSHIP OF WAYNE, ETC., INTERVENOR-DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1964.
Decided December 8, 1964.
*532 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Newton M. Roemer argued the cause for appellant (Messrs. Gelman & Gelman, attorneys).
Mr. Victor P. Mullica argued the cause for respondents.
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff, lessee of a portion only of a larger single tract of land, was denied specific performance of a written option to purchase the demised premises, solely because the local planning board had denied the lessor's application for approval of the subdivision. Plaintiff appeals from this adverse judgment of the Chancery Division.
The option to purchase at a price of $35,000 was contained in a written 10-year lease, dated January 4, 1955, "to be exercised not sooner than five years from the commencement of this lease nor later than sixty days prior to the termination of this lease, by notice in writing addressed to the landlord." Plaintiff duly exercised the option by written notice to the landlord, dated April 1, 1960 and admittedly received by the landlord. It has been ready, willing and presumably able to close title ever since that time.
The demised premises are particularly described in the lease by metes and bounds. They are on the northeasterly side of Route 23 in the Township of Wayne, with a frontage of 130.53 feet along that highway and a depth of about 200 feet more *533 or less, as shown on a survey dated May 21, 1960 received in evidence. The lessor's entire tract of 3.8 acres has a frontage of 230.53 feet along Route 23 and varies in depth from 640 feet on the southerly side to 900 feet on the northerly side, both more or less. The basic width of the demised premises, computed at an angle of 90° , is only 118 feet, differing from the frontage of 130.53 feet because of the angle at which the highway runs at the premises. So, too, the basic width of the remainder of the plot is only about 87 feet, more or less, even though its frontage is 100 feet, for the same reason.
There is a building on the demised premises, in which plaintiff has been conducting its business commonly referred to as a "Milk Bar." The remainder of the tract is generally vacant land and has been used principally as a miniature golf course, a use discontinued in 1959, according to defendants, and in 1962, according to plaintiff. Plaintiff has had the privilege of using the front part of the retained portion for the parking of customers' vehicles.
After defendant lessor received notice of plaintiff's exercise of the option, an application for approval of a subdivision plat, dividing the entire tract into two lots, one covering the demised premises and the other representing the portion to be retained, was submitted by defendant on June 1, 1960 to the township planning board. When the board first considered the application at a meeting on June 23, 1960, attended by the attorneys for both parties, it indicated its dissatisfaction with the proposed subdivision especially because the portion of the tract to be retained by the lessor would have a width of less than 100 feet in this business district. The board suggested consideration of a revision of the subdivision to avoid this situation and reserved decision.
Thereafter, defendant lessor advised the planning board by letter of July 7, 1960 that a revised subdivision plat would not be submitted and requested a decision on the application that had been filed. Thereupon, the planning board, at a meeting held on July 12, 1960, denied approval of the subdivision, stating as its reason:
*534 "It is the Board's opinion that, in consideration of the protection of the health, safety and welfare of the citizens of the Township of Wayne, no subdivision in this Business Area should have a lesser minimum width than 125 feet."
Obviously, neither of the subdivided lots along the highway business area would satisfy that minimum width requirement.
No appeal was taken by either party from this decision of the planning board. Instead, the lessor refused to convey, relying upon N.J.S.A. 40:55-1.23 which prohibits a contract to sell or a conveyance of only part of a plot or tract of land, without having obtained municipal approval of the subdivision, and subjects violators to a fine or imprisonment. This section also allows the municipality to obtain injunctive relief and to have a conveyance set aside and invalidated where a certificate of compliance with the statute has not been issued. Plaintiff filed its specific performance action on August 1, 1960, joining the lessors as defendants but not joining the planning board or the municipality as parties to the action. Thus, specific performance alone was demanded against defendant property owners and no relief was sought as to the municipal disapproval of the subdivision.
After the matter was pretried, the trial court made an order on January 17, 1963 granting the Township of Wayne leave to intervene in this action.
The matter was submitted for decision on a stipulation of facts supplemented by oral argument, with the result first noted above. The trial court was not asked to review the propriety of the action taken by the planning board. In fact, the local planning board has never been a party to the proceedings. The Township of Wayne intervened, but, as their attorney remarked during oral argument at the trial, its only interest was "to protect the power of the Planning Board, and as a safeguard for the residents of the Township of Wayne."
One other fact requires notation. When the planning board made its decision in July 1960, the local zoning ordinance did not contain any minimum size or area provision for lots in this business district. Thereafter, on September 6, 1960, the *535 zoning ordinance was amended to require a minimum lot area of 40,000 square feet and a minimum width of 200 feet for any lot in this business district. The validity of that zoning amendment has not been challenged. In effect, it would have precluded, from and after the time of its adoption, planning board approval of the proposed subdivision herein. N.J.S.A. 40:55-1.15. Also, specific performance of plaintiff's option to purchase the demised premises would now leave the lessor with an undersized vacant lot so far as the minimum width requirement is concerned, which would require the grant of a variance for erection of a business building thereon.
The lease containing the option to purchase made no reference to the obtaining of planning board approval of the subdivision, if the lessee exercised the option. But the Municipal Planning Act of 1953, N.J.S.A. 40:55-1.1 et seq., antedated the 1955 lease and both parties must be presumed to have known of its requirements. There was, therefore, an implied condition precedent that conveyance of the demised premises, being only a part of a single plot, was dependent upon the obtaining of the statutorily required subdivision approval.
Plaintiff's primary contention is that defendant lessor acted in bad faith, in order to get out of the bargain made, by thwarting the possibility of planning board approval when it refused to modify the proposed subdivision map to comply with the suggestion of the planning board, that the portion of the lot retained should be at least 100 feet wide. Plaintiff says that it was willing to surrender as much of the demised premises as would be needed to accomplish that result, including a partial demolition of the "Milk Bar" building, and would have paid the full option price of $35,000, without diminution for the part not conveyed to it. Plaintiff also claims bad faith on the lessor's part in refusing its offer to purchase the entire tract at any fair price. It notes that when it made the latter proposal, defendant property owner asked a price of $100,000 for the portion of vacant land being retained, as compared *536 with the option price of $35,000 for the larger frontage and business building, constituting the demised premises.
It would not be difficult to infer from all the facts and circumstances herein that the lessor found welcome escape from the option to purchase, given five years earlier, in the providential refusal of the planning board to approve the subdivision. Presumably, property values had increased in the interim, as indicated by defendant's demand of $100,000 for the unleased portion as against the option price of $35,000 for the improved demised premises. At the same time, defendant lessor was legally justified in refusing to convey the demised premises in the absence of subdivision approval, or a certificate of exemption. Such a conveyance would not have been valid under the Municipal Planning Act and would have exposed the lessor to penal sanctions.
If the lessor had revised the subdivision map, so that the retained portion would have had a minimum width of 100 feet, as suggested at the original planning board hearing, there was no assurance that the modified subdivision would have then been approved. The planning board made no commitment that it would grant approval if that were done. In the light of its final decision, based upon its policy that subdivision approval would not be given in this business district where the subdivision would result in a lot or lots less than 125 feet wide, the suggested revision might very well have met the same fate as the original plan. Thus, the proofs do not establish that the subdivision would have been approved and the sale consummated but for defendant's unwillingness to resubmit a modified subdivision map, in which it retained more land and parted title with less.
Plaintiff argues that the planning board had no authority to withhold approval of the subdivision because, at the time of the application to it, the zoning ordinance contained no provision fixing the minimum width of a lot in this business district. A municipal planning board is bound by express provisions in the local zoning ordinance and may not approve subdivisions violative of such express provisions. *537 N.J.S.A. 40:55-1.15. On the other hand, the planning board is not obliged to approve a subdivision merely because it does not violate any express provision of the zoning ordinance. Planning board consideration of a proposed land subdivision involves other factors in addition to the local zoning requirements. "The planning agency shall further require that all lots shown on the plats shall be adaptable for the intended purposes without danger to health or peril from flood, fire, erosion, or other menace.' N.J.S.A. 40:55-1.20. "Zoning relates to the type of building development which can take place on the land; subdivision control relates to the way in which the land is divided and made ready for building development." Levin v. Livingston Tp., 35 N.J. 500, 506 (1961). If planning boards had no alternative but to rubber-stamp their approval on every subdivision plat which conformed with the zoning ordinance, there would be little or no reason for their existence. While planning and zoning complement each other and serve certain common objectives, each represents a separate municipal function and neither is a mere rubber-stamp for the other. Levin v. Livingston Tp., supra, ibid.
True, the Municipal Planning Act expressly sets forth and limits the authority of local planning boards with respect to minimum lot sizes and lot area requirements. N.J.S.A. 40:55-1.15 provides, inter alia:
"Where there is a municipal zoning ordinance the standards in the subdivision ordinance with respect to minimum lot sizes and lot area requirements shall be identical with the provisions of the zoning ordinance. Where a zoning ordinance contains no such provisions or where there is no such ordinance, the standards including minimum lot sizes and lot area requirements shall be specified in the subdivision ordinance."
There is some ambiguity in the reason ascribed by the Wayne planning board in its decision of July 12, 1960, denying approval of the proposed subdivision. Because of a lack of more specific findings, there is some suggestion therein that the board was employing, as the sole determinative, a *538 minimum lot size standard, when such a standard had not then been specified either in the Wayne zoning ordinance or in the local land subdivision ordinance, as required by N.J.S.A. 40:55-1.15. Such may not be done, if rejection is based thereon without regard to any other valid reason for the disapproval. On the other hand, the board's decision was also expressly grounded upon a "consideration of the protection of the health, safety and welfare of the citizens of the Township of Wayne," as noted above. These are proper factors for planning board consideration under N.J.S.A. 40:55-1.20.
The width or frontage of subdivided lots in a business zone on a busy state highway, such as Route 23, may properly be considered by a planning board in determining whether the ingress and egress of automobiles to and from separate business uses constitutes a potential danger to the public safety. The board's minutes of June 23, 1960, when the matter was first considered, show an awareness by the board that another proposed highway, "the Bergen Thruway will affect this property." A map of the State Highway Department, submitted to us, confirms that the right-of-way of Route 80 takes a portion of and abuts the premises in question. Thus, we cannot conclude from the record herein that the planning board's denial of approval was patently invalid.
Good faith and an honest desire on defendant lessor's part to fulfill its contractual obligation should have impelled an appeal to the governing body from the adverse ruling of the planning board, within ten days after the date of the action of the planning board, as permitted by N.J.S.A. 40:55-1.19; or a legal review by a proceeding in lieu of prerogative writs might have been pursued in our Law Division, pursuant to R.R. 4:88, within the time limited for such review. See Highpoint, Inc. v. Bloomfield Planning Board, 80 N.J. Super. 570, 581 (Law Div. 1963). Defendant did not pursue either remedy, evidently satisfied to accept the planning board's decision as a legal justification for a refusal to convey, an escape from an agreement no longer desirable. At the same time, plaintiff did not challenge the planning board decision, *539 even though it was interested therein, as vendee and equitable owner, having exercised the option to purchase.
However, even if defendant seller or plaintiff buyer had pursued the above legal remedies, it is doubtful that a ruling in favor of the proposed subdivision would have been made before the zoning ordinance was amended on September 6, 1960, establishing the minimum area of 40,000 square feet and the minimum width of 200 feet for lots in this business zone. An appeal to the governing body would have required a hearing on notice to all interested parties. N.J.S.A. 40:55-1.19. Deficiencies in the planning board's findings could have been corrected or there might well have been a remand for clarification of such findings so as to protect the public interest. Thus, the reasonable probabilities are that the September 1960 zoning amendment would have controlled the situation before any conclusive ruling on the subdivision had been made and that amendment would have prevented an approval of the proposed subdivision.
As we said in Tice v. Borough of Woodcliff Lake, 12 N.J. Super. 20 (App. Div. 1951):
"A valid, applicable and subsisting ordinance precluding plaintiffs' planned project would be a bar in the Law Division to the relief sought by plaintiffs. The decision determining the cause is controlled by the ordinance in effect at the time of the decision and not by the ordinance which was operative when the permit was sought." (at p. 25)
See, too, Roselle v. Moonachie, 48 N.J. Super. 17, 22 (App. Div. 1957), wherein we quoted the above rule in Tice and added:
"The rule goes so far as to compel an appellate court to give superseding effect to an ordinance adopted in the interim between a trial judgment and the appellate determination."
Only where a party has substantially relied upon the pre-existing law prior to the effective date of a subsequent prohibitory ordinance, will he be held to be relieved of its effect. Tremarco Corporation v. Garzio, 32 N.J. 448, 456, 457 (1960).
*540 We are not confronted herein with a situation where tentative "approval" of a subdivision had already been granted by the municipal officials and, thereafter, there was an upgrading of the zoning requirement. Such tentative approval is protected from change for three years from the date of tentative approval. Hilton Acres v. Klein, 35 N.J. 570 (1961). In the instant case, there never was any municipal approval of the proposed subdivision.
Equity will not decree specific performance of a contract where compliance rests in the will or discretion of a third party uncontrolled by the defendant. Fiedler, Inc. v. Coast Finance Co., Inc., 129 N.J. Eq. 161 (E. & A. 1941); Iavicoli v. DiMarco, 142 N.J. Eq. 699 (E. & A. 1948). In each of these cases, specific performance was denied because of the absence of necessary approval of a governmental agency over whom defendant exercised no control. In Fiedler approval of the Federal Housing Administration was required and had not been obtained. In Iavicoli approval of the transfer of a liquor license by the local board of alcoholic beverage control had not been secured and this was held to be an effective bar to a decree for specific performance. The same principle applies here. Subdivision approval by the local planning board or governing body was an implied condition of the contract herein and was never fulfilled. For lack thereof, specific performance was properly denied by the Chancery Division.
Plaintiff points out that the Municipal Planning Act, N.J.S.A. 40:55-1.2, and the Wayne land subdivision ordinance expressly except from the requirement of municipal approval "divisions of property upon court order." From this it argues that municipal approval of the subdivision was not a prerequisite to its cause of action, because, if the court granted specific performance of the contract and directed defendant to convey the demised premises, there would result a division of property "upon court order."
The statutory exception, relating to "divisions of property upon court order," has not been defined or interpreted *541 in any reported decision, so far as we are aware. The language of the exception is broad and not limited to any particular types of court proceedings. We can understand its applicability to divisions of property in certain situations, such as condemnation proceedings and, perhaps, partition actions. It is not our function to explore herein the outer limits of the meaning of this statutory exception. We are satisfied that it was not the legislative intent that the policy of requiring municipal approval of land subdivisions, in the furtherance of municipal planning, could be rendered nugatory by a simple resort to a specific performance action in lieu of adhering to the established statutory procedure. Indeed, the statutory prohibition of even the making of a contract to sell without first obtaining planning board approval, N.J.S.A. 40:55-1.23, refutes the idea that an order for specific performance of a contract to sell, otherwise violative of the act, would constitute a "court order" within the intended meaning of N.J.S.A. 40:55-1.2. Even were an order for specific performance sufficient to bring a land subdivision within the statutory exception, a court of equity may reasonably withhold the grant of this equitable relief when there is an important overriding public interest involved as here. See Conger v. New York, West Shore & Buffalo R.R. Co., 120 N.Y. 29, 23 N.E. 983 (Ct. App. 1890). "The use of lands and, by the same token, the jus disponendi are subordinate to the police power * * *." Collins v. Board of Adjustment of Margate City, 3 N.J. 200, 205 (1949); Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 437 (1958).
Plaintiff also contends that it has a vested right to use the property here under contract as a vested nonconforming use, free from any later municipal restriction, under the decision in Beers v. Board of Adjustment, Wayne Tp., 75 N.J. Super. 305 (App. Div. 1962). We do not find the respective situations analogous. In Beers there was a permanent devotion of an undivided tract to development as five separate and distinct home sites, each improved by a dwelling. *542 We held that the owner was entitled to sell each home to separate purchasers free from any refusal of planning board approval. In the present case there is no permanent development of the vendor's property which would preclude the economic utilization of the property as a whole.
The final argument made by plaintiff is that we should exercise our original jurisdiction under R.R. 1:5-4, made applicable to our court by R.R. 2:5, and regard this case as an in lieu review of the action of the planning board, or as an action for a declaratory judgment, in order to expeditiously determine the controversy in its entirety. We decline to do so. More than four years have elapsed since the planning board acted on July 12, 1960. No appeal was ever taken from its decision and no court review of its action was ever pursued. The board's exercise of discretion should have been challenged long ago. The planning board is not a party to this action even now, although the municipal corporation is an intervening party. Important changes have taken place since July 1960, particularly the zoning amendment of September 6, 1960, fixing minimum area and width requirements, with both of which the proposed subdivision does not comply. That existing local law controls the situation at this time.
We can sympathize with plaintiff in the loss of its anticipated acquisition of title to the demised premises. But judicial sympathy may not be used as a substitute for applicable legal principles.
The judgment is affirmed. No costs.