645 A.2d 89

PIZZO MANTIN GROUP, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. TOWNSHIP OF RANDOLPH AND THE PLANNING BOARD OF THE TOWNSHIP OF RANDOLPH, DEFENDANTS–APPELLANTS AND CROSS–RESPONDENTS.

Argued November 29, 1993—Decided July 28, 1994.

218

*Edward J. Buzak* argued the cause for appellants and cross-respondents (*Mr. Buzak,* attorney; *Mr. Buzak* and *Robert B. Campbell,* on the briefs).

*Douglas R. Henshaw* argued the cause for respondent and cross-appellant (*Henshaw & Brady,* attorneys; *Mr. Henshaw* and *Rosella E. Nichay,* on the brief).

*Susan R. Kaplan* submitted a letter in lieu of brief on behalf of *amicus curiae,* New Jersey Builders Ass'n (*Hutt & Berkow,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This case concerns the scope of the authority of municipal planning boards over subdivisions under the Municipal Land Use Law. The proposed subdivision relates to a large tract located in an environmentally-sensitive area. The appeal raises the issue of whether municipal planning boards, in deciding whether to grant an application for a preliminary major subdivision that otherwise complies with the municipal subdivision and zoning ordinances, may deny such an application based on considerations of the general welfare, the purposes of the Municipal Land Use Law, and sound planning. Because the municipality in this case later enacted an amendment to its subdivision ordinance increasing the lot-size requirements for a major subdivision, the appeal raises the additional issue of whether the subdivision application must comply with the amended ordinance.

I

Plaintiff, Pizzo Mantin Group, owns a seventy-nine-acre tract, which it seeks to develop. Most of the land lies in Randolph Township and is known as Block 40, Lot 4. The rest, approxi-

mately 7.5 acres designated Block 15, Lot 23, lies in Mendham Township. For purposes of this litigation, the parties have assumed that the land in Mendham Township would be annexed by Randolph Township. The property was zoned RLD–3, which requires a minimum of 80,000 square feet for lots for which public water is available. Its development requires the approval of the Planning Board of the Township of Randolph (board or planning board).

Development of the subdivision, called Wexford Chase, would require extensive soil disturbance in a sensitive area. Wexford Chase is designated as wetlands. To the north lies Dawson Brook and to the south India Brook. Those streams are classified as Fresh Water 2, Trout Production, Category I Waters by the New Jersey Department of Environmental Protection (now the Department of Environmental Protection and Energy, referred to hereafter as the DEPE). That is the highest category of clean water in the DEPE's scheme. Additionally, a central ridge runs through the center of the tract, descending north and south into the streams. Its slopes have grades from fifteen to over twenty-five percent.

As a result, development of Wexford Chase would require a substantial amount of cut and fill. The proposed road alone would require 16,550 cubic yards of cut and 8,555 cubic yards of fill, with 8,245 cubic yards of soil removed. The lots would require an additional 63,200 cubic yards of cut and 34,700 of fill, resulting in another 28,500 cubic yards of soil removed. The planning board estimated the total soil removal at 36,745 cubic yards, which is approximately 2,000 truck loads. The board's other concerns lie in the number of trees required to be removed in the course of development and in damage to the trout-production streams due to storm-water drainage.

Plaintiff originally submitted a proposal that called for variances from the minimum lot size. The planning board issued a denial on November 5, 1990. On February 4, 1991, after a series of meetings between plaintiff and the planning board's representatives, plaintiff submitted a new preliminary major subdivision plan

that required no variances and met all bulk requirements. It called for thirty lots, two of which would contain detention basins. The plan included a road design specified by defendant Township's engineer, who notified the planning board that the design met basic engineering and environmental concerns. The application was followed by nine public hearings, which concluded on March 4, 1991, when the planning board voted to deny.

On April 1, 1991, the board adopted a resolution that formally rejected plaintiff's proposal. The board found that although the subdivision complied with the subdivision ordinance, and required no variances, the plan was fundamentally flawed, environmentally unsound, and unsuitable to the area as a whole. According to the board, a preliminary major subdivision could be approved under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129, only if it reflected reasonable planning. It concluded that approval of the proposed subdivision would not be consistent with the MLUL. Additionally, the board stated that plaintiff had failed to obtain the necessary DEPE permits. In actuality, on March 14, 1991, after the board's oral denial but before its formal rejection, the DEPE granted the necessary wetland permits.

Plaintiff then brought suit against the board and the Township of Randolph, alleging in part that the board's denial was arbitrary and capricious and that the actions of both the board and the Township did not conform to pertinent standards of the MLUL or applicable portions of the municipal ordinances.

The trial court ruled, in an oral opinion, that to the extent the board's denial was based on plaintiff's lack of DEPE permits, it was unjustified because plaintiff had received the required permits. However, it upheld the board's denial to the extent that it was based on the disturbance of the streams and the difficulties of the road design resulting from the soil removal. Its written opinion dismissed with prejudice all counts of the complaint relating to plaintiff's current application, but without prejudice concerning any future application by plaintiff.

The Appellate Division, disagreeing with the planning board's and trial court's grounds for denying the application, reversed and remanded the matter to the board to review the application and to make findings based on specific provisions of the municipal subdivision ordinance. 261 *N.J.Super.* 659, 619 *A.*2d 676.

Over one month after the Appellate Division's decision, the Township adopted Ordinance 9–93. That ordinance amended the existing ordinance and increased the minimum lot size applicable to plaintiff's tract. As a result, plaintiff filed a motion with the Appellate Division seeking to clarify the court's remand order and to preclude the application of the new ordinance to its proposed subdivision. The Appellate Division denied the motion, finding that it was premature, and remanded the matter for a determination consistent with its original opinion. In response, plaintiff filed a separate complaint in the Law Division challenging the validity of the new ordinance.

The planning board petitioned for certification. Plaintiff cross-petitioned claiming that the application should have been approved and that a remand was unnecessary and would unfairly give the board a second chance to deny the application. The court granted both the petition and cross-petition for certification, 134 *N.J.* 476–77, 634 *A.*2d 524 (1993).

## II

In denying the preliminary major subdivision the planning board based its determination on standards relating to the public welfare, the broad statutory purposes of the MLUL, and general principles of sound planning. Its determination raises the issue of whether it invoked correct standards governing the validity of a preliminary major subdivision of property.

The search for the standards that govern the regulation of land-use through zoning and subdivision is essentially a statutory one. "Zoning relates to the type of building development which can take place on the land; subdivision control relates to the way in which the land is divided and made ready for building develop-

ment." *Levin v. Township of Livingston,* 35 *N.J.* 500, 506, 173 *A.*2d 391 (1961). Municipalities possess the power to regulate the use of land through zoning and subdivision only to the extent that the Legislature has granted it to them. *See Riggs v. Township of Long Beach,* 109 *N.J.* 601, 610, 538 *A.*2d 808 (1988). Nevertheless, the land-use powers that are delegated to municipalities are "liberally construed in their favor." *Holmdel Builders Ass'n v. Township of Holmdel,* 121 *N.J.* 550, 566, 583 *A.*2d 277 (1990). Hence, municipalities possess powers over the regulation of land use that are implied or incidental to the authority expressly granted and "essential to the declared objects and purposes of the municipality." *Ibid.*

 The delegated powers to regulate land use are themselves part of the police powers exercised by local governments. "Zoning is inherently an exercise of the State's police power." *Zilinsky v. Zoning Board of Adjustment,* 105 *N.J.* 363, 367, 521 *A.*2d 841 (1987). Consequently, the general zoning authority, as any police power, must be exercised for the public health, safety, and welfare. *Holmdel Builders Ass'n, supra,* 121 *N.J.* at 568, 583 *A.*2d 277. Consistent with the police-power nature of regulatory land-use powers, local planning boards, historically, were deemed to have the authority to consider the general welfare in determining the validity of subdivisions. *E.g., Levin, supra,* 35 *N.J.* at 500, 173 *A.*2d 391; *Ardolino v. Board of Adjustment,* 24 *N.J.* 94, 110, 130 *A.*2d 847 (1957).

The statutory grant from the State of the municipal power to zone and to control the subdivision of property is now provided by the MLUL. *Diller & Fisher Co. v. Architectural Review Bd.,* 246 *N.J.Super.* 362, 367, 587 *A.*2d 674 (Law Div.1990). Prior to the MLUL, the standards and procedures for the approval of the subdivision of property were governed by the Municipal Planning Act of 1953, *N.J.S.A.* 40:55–1.1 to –1.42 (repealed 1975) (Planning Act). Looking to the law that arose under the Planning Act of 1953, the board here asserts that planning boards retain under the MLUL the power that they had under the Planning Act to ensure that subdivisions serve the public interest and that lots are

properly adaptable to the general purposes of zoning. That interpretation of the zoning and subdivision power is the basis for the board's contention that its action in this case, the denial of plaintiff's subdivision application based primarily on the broad purposes of the MLUL rather than on the specific standards contained in the municipal subdivision and zoning ordinances, was a valid exercise of its authority to control subdivisions. Our study of the MLUL brings us to a different conclusion.

Although courts have recognized historically the authority of planning boards to act in the general welfare in the exercise of the zoning and subdivision power, that authority was derived not from the nature of the police powers as such but rather from the provisions of the statute delegating those powers to municipalities. *See Levin, supra,* 35 *N.J.* at 509–10, 173 *A.*2d 391.

Among the powers of a municipal planning board under the Planning Act of 1953 was the authority to "require that all lots shown on the plats ... be adaptable for the intended purposes without danger to health or peril from flood, fire, erosion, or other menace." *N.J.S.A.* 40:55–1.20 (repealed 1975). Judicial decisions had interpreted that authority broadly. This Court stated in *Ardolino, supra,* 24 *N.J.* at 110, 130 *A.*2d 847, that "[i]t is the obvious intent of the act that in matters requiring approval of the planning board it should have the authority to impose those conditions which in the circumstances it believes are reasonably necessary for the protection of the public good and welfare." In *Levin, supra,* 35 *N.J.* at 500, 173 *A.*2d 391, the Court upheld a municipal zoning ordinance and its application to the plaintiff's development in part because it was within the "scope and intent" of the zoning statute. In *Popular Refreshments, Inc. v. Fuller's Milk Bar & Recreation Center,* 85 *N.J.Super.* 528, 538, 205 *A.*2d 445 (App.Div.1964), *certif. denied,* 44 *N.J.* 409, 209 *A.*2d 143 (1965), the court upheld the rejection by the planning board under the Planning Act of 1953 of a subdivision application because of the insufficient width of proposed lots based on "the 'consideration of the protection of the health, safety and welfare of the citizens of the [municipality].'" (quoting Planning Board (July 12, 1960)).

The MLUL, which became effective in 1976, redefined the powers and functions of a planning board in the review of subdivision applications. Generally, the MLUL was intended to retain "all of the present powers of municipalities in [the zoning and planning] fields" as well as "standardize[ ] the procedures to be employed by the various administrative agencies such as ... planning boards...." Senate County & Municipal Government Committee, *Statement to Senate Bill No. 3054*, at 67 (1975). As recognized by the Appellate Division below, 261 *N.J.Super.* at 665, 619 *A.*2d 676, the common themes advanced throughout the public hearing conducted prior to adoption of the MLUL were the need to simplify and standardize procedures before the local boards, and also to maintain, if not broaden, the statutory municipal powers of zoning and planning as embodied in pre-MLUL law. *See Public Hearing Before Senate County and Municipal Government Committee on Senate Bill No. 3054*, at 1, 4 (Apr. 3, 1975).

Under the MLUL, a municipality may, by ordinance, require proposed subdivision plans to be submitted to the planning board. *N.J.S.A.* 40:55D–37. The subdivision ordinance must also include "standards for preliminary and final approval." *N.J.S.A.* 40:55D–38(c). Those standards govern specific features of the subdivision plan, including provisions ensuring: (1) consistency of the layout or arrangement of the subdivision with the requirements of the zoning ordinance, *N.J.S.A.* 40:55D–38b(1); (2) streets of sufficient width and suitable grade and suitably located to accommodate prospective traffic and to provide access for emergency vehicles, *N.J.S.A.* 40:55D–38b(2); (3) coordination of the street design to create a convenient system, consistent with the official map and master plan, *ibid.*); and (4) "adequate water supply, drainage, shade trees, sewerage facilities and other utilities necessary for essential services to residents and occupants," *N.J.S.A.* 40:55D–38b(3). The MLUL further provides that zoning ordinances "shall be drawn with reasonable consideration to the character of each district and its peculiar suitability for particular uses and to encourage the most appropriate use of the land." *N.J.S.A.* 40:55D–62.

Although the MLUL gives planning boards, in accordance with the standards of the subdivision ordinance, the power to require that subdivision proposals comply with zoning ordinances, *N.J.S.A.* 40:55D–38b(1), the MLUL has no provision, as did the Planning Act, that grants a planning board the power to require that lots in the subdivision plan be "adaptable for the intended purposes without danger to health or peril from flood, fire, erosion, or other menace." *N.J.S.A.* 40:55–1.20 (repealed 1975). Rather, the MLUL specifically provides that "[t]he planning board *shall,* if the proposed subdivision complies with the [subdivision] ordinance and this act, grant preliminary approval to the subdivision." *N.J.S.A.* 40:55D–48 (emphasis added).

The board argues that *N.J.S.A.* 40:55D–48 gives a planning board the inherent power to deny a proposal if it is inconsistent with the purposes of the MLUL, as enumerated in *N.J.S.A.* 40:55D–2. Those purposes include, among others, encouraging "municipal action to guide the appropriate use or development of all lands ... in a manner which will promote the public health, safety, morals, and general welfare." *N.J.S.A.* 40:55D–2(a).[1] The

---

[1] The other purpose are as follows:

\* \* \* \* \* \* \* \*

b. To secure safety from fire, flood, panic and other natural and man-made disasters;

c. To provide adequate light, air and open space;

d. To ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole;

e. To promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;

f. To encourage the appropriate and efficient expenditure of public funds by the coordination of public development with land use policies;

g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;

h. To encourage the location and design of transportation routes which will promote the free flow of traffic while discouraging location of such facilities and routes which result in congestion or blight;

board relies not only on the language of *N.J.S.A.* 40:55D–48 and –
2. It also finds support in *El Shaer v. Planning Board,* 249
*N.J.Super.* 323, 592 *A.2d* 565 (App.Div.), *certif. denied,* 127 *N.J.*
546, 606 *A.2d* 360 (1991). The trial court below similarly inter-
preted *El Shaer* to mean that a planning board in its review of a
subdivision may consider the general purposes of zoning and the
public welfare independently of the standards enumerated in the
subdivision ordinance, and on those grounds it sustained the
board's rejection of plaintiff's application.

In *El Shaer,* the Appellate Division affirmed the denial of a ten-
lot subdivision plan in which the planning board determined that
several of the lots were unsuitable for residential building. In
denying the application, the board also cited severe drainage
problems and traffic hazards. The Appellate Division rejected the
applicant's argument that it was entitled to a subdivision approval
simply because it conformed to the bulk requirements of the
zoning ordinance. Citing *Levin, supra,* 35 *N.J.* 500, 173 *A.2d* 391,
and *Popular Refreshments, supra,* 85 *N.J.Super.* 528, 205 *A.2d*
445, the Appellate Division observed that a planning board "may
require that all the lots proposed on the development plat are

---

i. To promote a desirable visual environment through creative development
techniques and good civic design and arrangement;

j. To promote the conservation of historic sites and districts, open space,
energy resources and valuable natural resources in the State and to prevent
urban sprawl and degradation of the environment through improper use of
land;

k. To encourage planned unit developments which incorporate the best
features of design and relate the type, design and layout of residential,
commercial, industrial and recreational development to the particular site;

l. To encourage senior citizen community housing construction;

m. To encourage coordination of the various public and private procedures
and activities shaping land development with a view of lessening the cost of
such development and to the more efficient use of land;

n. To promote utilization of renewable energy resources; and

o. To promote the maximum practicable recovery and recycling of recycla-
ble material from municipal solid waste through the use of planning practic-
es designed to incorporate the State Recycling Plan goals and to comple-
ment municipal recycling programs.

[*N.J.S.A.* 40:55D-2.]

shown to be adaptable for the intended purposes and without danger to the public welfare." 249 *N.J.Super.* at 328, 592 *A.*2d 565. Similarly, in *Kaplan v. Linwood,* 252 *N.J.Super.* 538, 600 *A.*2d 180 (1991), the Law Division held that compliance with bulk requirements does not require automatic board approval.

The Appellate Division in this case concluded that under the MLUL a planning board does not have the broad authority to consider a subdivision application in light of the general welfare or of the purposes of zoning under the MLUL or general principles of sound planning apart from the standards of applicable local subdivision and zoning ordinances. It found that if a proposed subdivision complies with local ordinances and the MLUL, then a planning board " 'shall ... grant preliminary approval.' " 261 *N.J.Super.* at 666, 619 *A.*2d 676 (quoting *N.J.S.A.* 40:55D–48) (emphasis omitted). It found that the MLUL, unlike the Planning Act, did not give planning boards the general power to require that subdivisions not pose a danger to public health or safety. According to the Appellate Division, *N.J.S.A.* 40:55D–2, which sets forth the general purposes of the MLUL, "was not a codification of standards for the purpose of guiding planning boards in the review of particular subdivision applications. Rather, it provides a framework, together with *N.J.S.A.* 40:55D–48, from which general guidelines and particular standards should be devised by the governing body." *Id.* at 667, 619 *A.*2d 676.

A contrary understanding indicated by *El Shaer,* the Appellate Division now points out, arose from its inadvertent omission of the fact that the actual subdivision proposal, though conforming with the *bulk* requirements of the *zoning* ordinance, did not conform with all the specifications and standards of the *subdivision* ordinance. Thus, *El Shaer,* in ruling that a planning board was not required to approve a subdivision proposal that met all of the bulk requirements of the zoning ordinance, implied that a planning board had the inherent power to reject a subdivision that posed a danger to the public welfare without any reference to the requirements of the subdivision ordinance.

We concur generally in the Appellate Division's analysis and interpretation of the MLUL. The MLUL evinces a legislative design to require consistency, uniformity, and predictability in the subdivision-approval process. The legislative scheme contemplates that a planning board's review of a subdivision proposal, including the layout of the entire design, must be made within the framework of the standards prescribed by the subdivision and, if pertinent, the zoning ordinances.

Because a municipality must exercise its zoning and subdivision powers by enacting ordinances, the conclusion follows that the municipality may not exercise such powers based directly on the general statutory purposes of the MLUL. Municipalities may effectuate those statutory purposes only by incorporating them as standards in duly-enacted zoning and subdivision ordinances.

The mandate under *N.J.S.A.* 40:55D–48 that on compliance with the subdivision ordinance and the MLUL the application "shall" be approved supports such a conclusion. Without clear standards established by the local ordinance, the applicant cannot estimate the cost of the approval process or predict its ultimate outcome. Further, the absence of express standards may invite inconsistency, encourage controversy, and lead to arbitrary action by the planning authority.

That interpretation, moreover, does not in any sense eliminate or deprecate the significance of the public welfare or of the general purposes of the land-use laws and sound planning in the regulation of the subdivision of property. Rather, it channels the manner in which those essential concerns may be considered and brought to bear in the subdivision process. As pointed out by the Appellate Division, municipalities remain free to adopt "measures reasonably designed to advance the purposes of zoning and sound planning." 261 *N.J.Super.* at 669, 619 *A.*2d 676. Thus, the standards that govern subdivisions under the MLUL must bear a reasonable relationship to the purposes of the MLUL, relate to sound planning objectives, and deal with the statutory terms and conditions specifically enumerated in the statute. Also, the stan-

dards that govern subdivisions should incorporate the requirements set out in the local zoning ordinances, *N.J.S.A.* 40:55D–38(b)(1), which, in turn, should be drawn with consideration for the "character of each district" and "to encourage the most appropriate use of land." *N.J.S.A.* 40:55D–62. Further, as stressed by the Appellate Division, "total suitability" is still a legitimate goal of municipal land-use ordinances. 261 *N.J.Super.* at 670, 619 *A.*2d 676. Subdivision ordinances may be flexible enough to allow broad discretion in the protection of the public interest, even though they must be reasonably specific to provide guidance and to foster consistency and fairness in their application. *See Levin, supra,* 35 *N.J.* at 511, 173 *A.*2d 391 (recognizing that power to act in public welfare must be exercised in manner consistent with established standards).

In sum, the general purposes of the land-use laws may be fully effectuated by municipalities through their incorporation in subdivision ordinances that provide clear standards to guide both property owners and planning boards.

### III

Because the Appellate Division held that a municipal planning board in determining the validity of a subdivision was required to apply only the standards provided in the municipal subdivision ordinance and not those otherwise reflected in the broad purposes of the MLUL, it remanded the matter to enable the board to reconsider plaintiff's preliminary major subdivision application under the provisions of the Township's subdivision ordinance. 261 *N.J.Super.* at 672, 619 *A.*2d 676.

In rejecting plaintiff's application, the board expressed concern over several aspects of plaintiff's proposed development. In particular, the board noted the soil removal of 36,745 cubic yards (2,000 truck loads) that would be required because of the steep slope of the property in question. The board also stressed the number of trees required to be removed in the course of the development and the damage to the trout production streams due

to storm-water drainage. In addition, the board was concerned that the proposed development would result in inappropriate traffic flow. The board further considered the fact that the site contains areas of "historical significance" that would not be preserved. Those concerns were reflected in the board's determination that the proposed subdivision was not suitable or consistent with principles of sound planning as reflected in the general purposes of the MLUL.

The Appellate Division, however, pointed out that Randolph Township's ordinance has provisions that are relevant to the board's concerns about steep slopes, removal of huge amounts of soil, and the effects on wetlands and that relate to the suitability of proposed subdivisions and would allow the board to withhold approval of proposed lots where there is a question regarding their suitability. 261 *N.J.Super.* at 662, 619 *A.*2d 676.

Several provisions of the subdivision ordinance bear materially on the concerns expressed by the board. *Township of Randolph Ordinance* ch. 15. Thus, section 15-26(a), which is entitled "suitability" of lots, provides that the board may withhold approval of lots if their suitability for their intended use is questionable due to factors such as rock formation, the presence of steep slopes, flood conditions, "or similar circumstances." Further, that section incorporates by reference the Township's steep-slope regulations contained in the zoning ordinance. Those regulations govern lots having slopes in excess of fifteen percent, which "invariably involve severe limitations to development, including ... building and road construction and septic effluent disposal," as well as the potential for disturbance of soil, surface water runoff, soil erosion, pollution of streams, and the danger of flooding and water drainage. *Township of Randolph, Zoning Ordinance* § 33-38.1. In addition, section 15-31 of the subdivision ordinance provides that "natural features such as trees, brooks, hilltops and views shall be preserved whenever possible in designing any subdivision containing such features." Section 15-27 controls flood-prone or other "unsuitable lands." Other specific provisions concern drainage,

the layout and minimum requirements of streets, soil erosion control, and grading, all of which may be pertinent to the review of plaintiff's application.

Those provisions of the subdivision and zoning ordinances provide standards relating both generally and specifically to the suitability of a proposed subdivision and, in some measure, reflect the general purposes of zoning and planning of the MLUL. The standards of those ordinances, therefore, should have been applied in assessing the significance of those factors considered by the board in determining the suitability of the proposed subdivision.

We therefore affirm the judgment of the Appellate Division reversing the trial court and remanding the matter for a determination of the validity of the subdivision "in the context of standards encompassed in the subdivision and, if pertinent, the zoning ordinance." 261 *N.J.Super.* at 666–67, 619 *A.*2d 676.

■ The Appellate Division remanded the matter directly to the planning board. We believe that although the validity of the subdivision must be reconsidered by the board, the matter should be remanded initially to the trial court, which reviewed and affirmed the board's decision on grounds that the Appellate Division and this Court have ruled to be inappropriate. The remand to the trial court will enable it to determine the nature and scope of any hearing to be undertaken by the planning board to reassess or to recast its factual findings in light of the municipal-subdivision ordinance.

In remitting the proceedings to the trial court, we acknowledge that court's characterization of the hearings before the planning board on the plaintiff's subdivision application as "passive." Its observation implies that the board should have taken a more active and constructive role in reviewing the subdivision application.

Although a planning board is not required affirmatively to propose suggested revisions and modifications of a subdivision plan or site plan, the MLUL contemplates active involvement by

planning boards in their review of subdivisions. The generalized design standards for subdivision ordinances prescribed by the MLUL, *e.g., N.J.S.A.* 40:55D–38, necessarily invoke the planning board's expertise and familiarity with local conditions and implicate the exercise of discretion by planning boards. That discretion encompasses the express authorization of planning boards, in connection with preliminary approval of a major subdivision, to impose conditions "including but not limited to use requirements; lay-out and design standards for streets, curbs and sidewalks; lot size; yard dimensions and off-tract improvements." *N.J.S.A.* 40:55D–49. That discretion is best exercised by a process in which planning boards affirmatively interact with developers when reviewing proposed subdivisions. See *S.T.C. Corp. v. Planning Bd.,* 194 *N.J.Super.* 333, 335, 476 *A.*2d 888 (App.Div.1984).

 Plaintiff further argues with respect to the hearing to be held on remand that only those five members of the current planning board who were originally on the board should be able to participate. Plaintiff cites *N.J.S.A.* 40:55–10.2 and *Patel v. Planning Board,* 258 *N.J.Super.* 437, 609 *A.*2d 1319 (Law Div.1992), for support of its position that only the original five may vote.

*N.J.S.A.* 40:55D–10.2 allows members absent from a hearing to vote on an application if they certify that they have read the transcript of the hearing. *Patel* held that under *N.J.S.A.* 40:55D–10.2, which is silent on the issue, a newly-appointed member is not the equivalent of an absent member and that to permit new members to vote under *N.J.S.A.* 40:55D–10.2 would allow its absent-member exception to overcome the general rule that members must be present at testimony to participate. 258 *N.J.Super.* at 446, 609 *A.*2d 1319.

Because the remand involves review of plaintiff's proposal under the provisions of the municipal ordinances, the board's rehearing and determination on remand need not be confined to the record. The hearing on remand does not foreclose the possibility that additional evidence may be required by the board or sought by plaintiff. Indeed, as we have pointed out, the board has the

discretion to consider modifications and conditions as a basis for approval. Those are matters that the trial court may settle on remand.

Thus, the Appellate Division's requirement of "a decision in the context of standards" contained in the municipal subdivision and zoning ordinances, 261 *N.J.Super.* at 666, 619 *A.*2d 676, might require evidence beyond the current record. As a result, *Patel* is not entirely applicable. In that case, the board did not need to go beyond the record to reach a proper decision. See *Patel, supra,* 258 *N.J.Super.* at 440–41, 609 *A.*2d 1319. In fact, the court in *Patel* suggested that were a " 'complete new hearing' " to be held it would be appropriate for new members to vote. *Id.* at 444, 609 *A.*2d 1319 (quoting *Lawrence M. Krain Assocs. v. Mayor of Maple Shade,* 185 *N.J.Super.* 336, 342, 448 *A.*2d 522 (Law Div.1982)). In any event, because the board must make new findings of fact and reach additional and different conclusions of law in applying the provisions of the subdivision and zoning ordinances that were not addressed in the earlier proceedings, its determination on remand will require at a minimum a review of the record and reassessment of the evidence. That, in effect, entails a fresh determination that can be undertaken by all the members of the board, both those who participated in the earlier hearings as well as those who have since joined the board.

## IV

Plaintiff also argues that on remand its application should be exempt from the amended zoning ordinance, which became effective on March 16, 1993. By amending Chapter 33, section 33–85(c), Ordinance 9–93 changes the minimum lot size of RLD–3 districts. As a result, plaintiff's proposal, which was based on the 80,000–square–feet–minimum–size requirement, would be nonconforming under 9–93 and would therefore require variances or a submission of a new proposal. The Appellate Division did not address the applicability of the amended ordinance to plaintiff's proposed subdivision, nor did it include that issue in the matter

remanded. As a result, plaintiff brought a separate action to challenge its applicability to its proposed subdivision. In its cross-petition to this Court, plaintiff raised the issue of the applicability of the new ordinance.

Plaintiff argues that *N.J.S.A.* 40:55D–49 of the MLUL, which gives applicants who have received preliminary approval three years of statutory protection from zoning changes, should be applied to plaintiff's application. It relies on the case of *S.T.C. Corp., supra,* 194 *N.J.Super.* 333, 476 *A.*2d 888, for the proposition that the statutory protection provided by *N.J.S.A.* 40:55D–49 is also applicable where, but for a planning board's error in failing to grant a preliminary approval, the property owner's application should have been approved before the adoption of the new law. Plaintiff maintains that the protection of the statute should thus have attached at the time when the application *should have been* approved. Defendants contend, however, that if the validity of the subdivision must be redetermined, that determination should be in accordance with the amended ordinance under the time-of-decision rule.

Under the "time-of-decision rule," courts may apply the statute in effect at time of the decision. *Lake Shore Estates v. Denville Township,* 255 *N.J.Super.* 580, 589, 605 *A.*2d 1106 (1991), *aff'd. o.b.,* 127 *N.J.* 394, 605 *A.*2d 1073 (1992). "The purpose of the principle is to effectuate current policy." *Kruvant v. Mayor & Council of Cedar Grove,* 82 *N.J.* 435, 440, 414 *A.*2d 9 (1980). A municipality may change its land-use ordinances after an application has been filed, even "in direct response to the application." *Burcam Corp. v. Planning Bd.,* 168 *N.J.Super.* 508, 521, 403 *A.*2d 921 (1979). However, the time-of-decision rule is not automatic. *See Lake Shore, supra,* 255 *N.J.Super.* at 589, 605 *A.*2d 1106. A court must balance the municipality's zoning interest against the developer's degree of reliance on the old statute and its entitlements of right. *Id.* at 590–91, 605 *A.*2d 1106. *See also Phillips v. Curiale,* 128 *N.J.* 608, 617, 608 *A.*2d 895 (1992) (holding that retroactive application of statute turns on legislative intent and

whether retroactivity works either unconstitutional interference with vested rights or manifest injustice).

In this case, resolution of the time-of-decision rule issue should be held in abeyance. Under the circumstances, which call essentially for a reconsideration of a decision previously rendered, it is appropriate to require the planning board to complete that redetermination. In the event the board concludes that the subdivision, either in its present form or with modifications or conditions imposed or approved by the board, would meet the standards of the prior ordinance, the trial court may, thereafter, on the basis of a more complete record, determine the applicability of the new ordinance under the time-of-decision rule. If, on the other hand, plaintiff's application is again rejected, presumably any future application for subdivision will be governed by the ordinances in effect at the time of the resubmission.

## V

We affirm the Appellate Division's judgment reversing the trial court's determination, and modify its judgment to remand the matter to the trial court.

*For modification and affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.