## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2814-18T2

BERNADETTE M. CRACCHIOLO,
co-trustee of the Bernadette M.
Cracchiolo trust u/a/d 8/8/83 as
amended,

      Plaintiff-Appellant,

v.

BOROUGH OF ENGLEWOOD
CLIFFS PLANNING BOARD and
ESTATE OF JOSEPHINE MAURO,

      Defendants-Respondents.

_____

Argued telephonically May 19, 2020 –
Decided July 7, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-4641-16.

Andrew M. Grenell argued the cause for appellant
(Fein, Such, Kahn & Shepard, PC, attorneys; Andrew
M. Grenell, of counsel and on the briefs).

Christopher E. Martin argued the cause for respondent Borough of Englewood Cliffs Planning Board (Morrison Mahoney, LLP, attorneys; Christopher E. Martin, of counsel and on the brief).

Elaine S. Berkenwald argued the cause for respondent Estate of Josephine Mauro (Law Offices of Mark J. Sokolich, attorneys; Elaine S. Berkenwald, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from the December 31, 2018 Law Division order affirming the decision of the Borough of Englewood Cliffs Planning Board (the Board), which granted approval to the Estate of Josephine Mauro (the Estate) to relocate the lot lines of Lots 1, 2, and 3 in Block 406 (the subject property). We affirm.

I

In 1961, the Borough of Englewood Cliffs' Planning and Zoning Commission (the Commission) granted a three-lot subdivision of the subject property. On September 15, 1961, a filing in the Bergen County Clerk's Office perfected the initial subdivision.

In a resolution dated June 24, 1978, the Commission approved a second subdivision of the subject property, permitting the realignment of the lot line between what is now designated as Lots 2 and 3. However, the approved

realignment was never perfected by recording a subdivision plan or deed. A year later, a Commission resolution dated January 26, 1979 approved a third subdivision permitting another relocation of the same lot line. Like the second subdivision, the third subdivision was never perfected. Nonetheless, the Borough amended its tax records and tax map to reflect the third, 1979 subdivision.

At the time of the 1979 subdivision, a dwelling existed on what is now designated as Lot 3. The dwelling and part of its driveway encroach onto Lot 2, the center lot, pursuant to the last recorded 1961 subdivision. A dwelling was constructed on Lot 1 following the 1979 subdivision. Lot 2 is currently unimproved.

On July 17, 2014, the Estate applied to the Board for minor subdivision approval, in a further attempt to address the problems created by the failure to perfect the second and third subdivisions. The Estate then revised its application to seek major subdivision approval because three lots were involved. The Estate sought to realign the interior property lines of the subject property to conform to the unperfected 1979 subdivision and thereby cure the failure to perfect that subdivision. At the time, the Estate owned Lots 2 and 3, and the owner of Lot 1 consented to the application.

The Board conducted public hearings on the application in February and March 2016. The record shows the area surrounding the subject property has a serious flooding and water runoff problem due to its location in the Palisades, with a large commercial shopping center located uphill from the neighborhood. Residents testified regarding their individual experiences with the neighborhood's stormwater drainage issues.

Mark S. Martins, a professional engineer and land surveyor, testified as an expert for the Estate. Martins testified that the proposed subdivision sought to conform Lot 2, which is encroached by Lot 3, to the approved but unperfected 1979 subdivision. In order to maintain the required minimum width of seventy feet for Lot 2, Martins proposed a slight two-foot modification from the existing lot lines.

Martins also testified regarding the proposed stormwater management plan. He explained the Estate's proposal included seepage pits in the northwest corner of Lot 2 in order to capture surrounding roof drainage. Lot 2 contained no prior stormwater management. In addition, the Estate proposed to remove existing roof drainage that sent water into the street from Lot 3 and contain that drainage on site with a retention system and additional seepage pits. He opined the application presented a de minimus impact on public utilities.

Kenneth Ochab, a professional planner, also testified as an expert for the Estate. Ochab testified the existing dwelling on Lot 3 required a single rear yard variance. Although the local ordinance designates Lot 3's frontage along Toni Drive, the front of the dwelling faces Mauro Road. Therefore, the ordinance defined rear yard functions as a side yard. Ochab explained the Estate sought a variance to permit a setback of 18.1 feet where a minimum of 25 feet is required. No one opposed the requested variance during the hearings.

In opposition to the application, plaintiff presented expert testimony from Nickolas Wunner, a professional engineer and land surveyor. Wunner raised concerns about the inadequacy of the Estate's plan for stormwater management. He asserted that the Estate's proposed stormwater drainage plan did not address the issue; however, he did not explain how he reached this conclusion. Wunner acknowledged that the realignment of lot lines had no effect on flooding. Moreover, he agreed the proposed seepage pits, compared to no seepage pits, would help reduce the runoff going into Mauro Road.

Plaintiff also presented the testimony of a certified arborist, Scott Cullen, who testified that Lot 2 contains twenty-two trees and large shrubs, ten of which are large shade trees that contribute to the interception of rain. Cullen opined that removing five of the large shade trees – which he projected would occur in

A-2814-18T2

order to build a home – would result in an additional 200,000 gallons of rainwater reaching the ground. In reaching this conclusion, he relied upon generally accepted literature and made no specific conclusions as to the conditions on the Lot 2. On cross-examination, Cullen conceded that after two inches of rainfall trees are relatively ineffective in absorbing water.

On March 20, 2016, the Board voted to approve the Estate's application by a vote of eight to one. On April 25, 2016, the Board issued its formal resolution memorializing its approval of the Estate's application. It concluded the single zoning deficiency presented did not amount to a zoning impediment, because the so-called rear yard effectively functioned as a side yard. The Board found the Estate's plan improved the existing stormwater management system, observing the "calculations demonstrated that the project will reduce both the peak rate and volume of runoff from the site. The requirement is that the development not increase it. What is being offered is a bonus."

Regarding the off-site flooding and water runoff issue affecting the neighborhood, the Board's resolution stated that as a planning board, it had no authority to deny the Estate's application based on already existing off-site conditions, citing Dunkin' Donuts of N.J. v. Tp. of North Brunswick, 193 N.J. Super. 513, 515 (App. Div. 1984), Tennis Club Assoc. v. Planning Bd., 262 N.J.

Super. 422, 434-435 (App. Div. 1983), and Lionel's Appliance Center, Inc. v. Citta, 156 N.J. Super. 257 (Law Div. 1978).  The resolution further provided "that the only consideration [the Board] can give to off-site conditions is to require, as a condition of approval, a pro rata contribution of the costs of improvements made necessary by the project.  N.J.S.A. 40:55D-42."

Accordingly, the resolution required as a condition of approval that the subject property "be impressed with an obligation to contribute its fair share of any off[-]site draining plan that is engineered by the Borough and paid for as a special assessment on properties similarly circumstanced."  Additional conditions included: the installation of operable seepage pits within nine months; compliance with all conditions set forth in engineering review letters dated March 30, 2016 and February 5, 2016; and general conditions imposed on applicants similarly situated.

On June 15, 2016, plaintiff filed a two-count complaint in lieu of prerogative writs against the Board and the Estate.  Plaintiff alleged she "is an interested party affected by the major subdivision approval," which will have an adverse impact upon her "right to use and enjoy her property."  Count one asserted the Board's resolution approving the Estate's application was arbitrary, capricious and unreasonable because the Board failed to consider the water

drainage and runoff issue raised at the hearings. In count two, plaintiff contended the approval of a major subdivision application required separate preliminary and final approvals.

Following a bench trial, the Law Division issued the order under review, affirming the subdivision approval and dismissing plaintiff's complaint. A thirty-six-page written opinion accompanied the order.

In his opinion, the trial judge concluded the Board adequately weighed the positive and negative criteria required for the approval of a variance, pursuant to N.J.S.A. 40:55D-70(c). As to the issue of storm water drainage and runoff, the judge found the Board "specifically condition[ed] its approval upon compliance with the reports of the Board's experts as well as other conditions to address the stormwater issues . . . ." Furthermore, he found the Board based its conclusions on a complete record and that it "carefully and dutifully reviewed the drainage and stormwater issues affecting not only the Property but the surrounding area as well."

Regarding plaintiff's claim that the Board's approval was procedurally deficient, the judge rejected the argument as "entirely without merit." He noted the application was clearly identified and filed as an application for major

subdivision and, therefore, did not require a bifurcated approval process. He stated that only applications for "major developments" required such approval. Plaintiff has not argued that the trial court erred by rejecting her procedural deficiency claim. As a result, we consider the issue waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

II

On appeal, plaintiff contends that the Estate's application and the Board's approving resolution "so critically failed" to address her concern for the property's on-site drainage capacity, rendering the Board's approval arbitrary, capricious and unreasonable. Plaintiff also argues the Board unreasonably disregarded the testimony of its expert and fact witnesses.

A municipal entity's "decision is 'invested with a presumption of validity[,]'" 62-64 Main St., LLC v. Mayor of City of Hackensack, 221 N.J. 129, 157 (2015) (quoting Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537 (1971)), and "[t]he challenger of municipal action bears the 'heavy burden' of overcoming this presumption . . . ." Vineland Constr. Co. v. Twp. of Pennsauken, 395 N.J. Super. 230, 256 (App. Div. 2007) (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998)). The actions of a planning board must be based on

A-2814-18T2

"substantial evidence." Ibid. As long as the board's actions are "supported by substantial evidence in the record, [we are] bound to affirm that determination." 62-64 Main St., 221 N.J. at 157.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). A court "may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). We "give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462.

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted). In contrast, a board's decision concerning a question of law "is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no

peculiar skill superior to courts' regarding purely legal matters.'"  Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 559 (2018) (quoting Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

While a planning board must assess an application in consideration of the "well-being and the welfare of individuals who will ultimately become owners and occupants in the subdivision[,]" Levin v. Twp. of Livingston, 35 N.J. 500, 510 (1961), a board cannot deny an application for "subdivision approval 'based on considerations of the general welfare, the purposes of the Municipal Land Use Law[1] [MLUL], and sound planning." Green Meadows at Montville, L.L.C. v. Planning Bd. of Montville, 329 N.J. Super. 12, 18 (App. Div. 2000) (quoting Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 219 (1994)).

A planning board evaluates applications with the public health and welfare in mind only in a sense of whether the subdivision plan conforms with the municipal ordinances which should, on their own, advance the public welfare.  Pizzo Mantin, 137 N.J. at 228-30.  A board may impose "terms, conditions, and requirements peculiar to site plan approval" that advance the health and safety of the public.  W.L.

---

[1]  N.J.S.A. 40:55D-1 to -163.

Goodfellows Co. of Turnersville v. Wash. Twp. Planning Bd., 345 N.J. Super. 109, 116 (App. Div. 2001).

Plaintiff argues the Board's approval violated the MLUL, which requires the approval of a subdivision plan include provisions ensuring, among other things, the adequacy of drainage.  N.J.S.A. 40:55D-38(b)(3).  Plaintiff asserts the record lacked sufficient information regarding the water drainage and runoff problem for the Board to reach a reasonable conclusion.  This argument lacks merit.

The record reflects that the Board dedicated the vast majority of its factfinding to the issue of storm water management.  The Board heard extensive testimony from multiple experts on the issue, including its own, who presented contradicting opinions as to the severity of the issue presented and the level of relief provided by the proposed plan.  As the trial court correctly noted, a planning board may freely accept or reject the testimony of witnesses after making credibility determinations, and even rely on its own personal knowledge and expertise.  See El Shaer v. Planning Bd., 249 N.J. Super. 323, 330 (App. Div. 1991).

After careful consideration of the evidence presented, the Board was satisfied that the proposed subdivision plan adequately addressed stormwater management.  Significantly, it noted the Estate's application and the conditions

imposed by its final resolution added stormwater management devices where none presently exist. The Board clearly considered the issues raised by plaintiff.

While we are mindful of the concerns expressed by plaintiff and borough residents, the Estate's application made only a minor adjustment to an interior boundary line between two lots, with no changes to the current physical condition of the property. Although the Estate clearly pursued the lot line adjustment in order to render the middle lot marketable, any future construction will be subject to its own applicable permitting scheme. The Board's approval of the Estate's application was not arbitrary, capricious or unreasonable.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2814-18T2