255 N.J. Super. 580 (1991)
605 A.2d 1106
LAKE SHORE ESTATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
DENVILLE TOWNSHIP PLANNING BOARD, MAYOR AND MUNICIPAL COUNCIL OF THE TOWNSHIP OF DENVILLE AND THE TOWNSHIP OF DENVILLE, DEFENDANTS-APPELLANTS/CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1990.
Decided March 15, 1991.
*581 Before Judges DREIER, ASHBEY and LANDAU.
Joel A. Murphy argued the cause for appellants/cross-respondents (Murphy & Kurnos, attorneys; Joel A. Murphy on the brief).
Lawrence S. Berger argued the cause for respondent/cross-appellant (Berger & Bornstein, attorneys; Bruce D. Nimensky on the brief).
*582 The opinion of the court was delivered by LANDAU, J.A.D.
These are cross-appeals from a judgment in the Superior Court, Law Division, entered February 4, 1989, but certified as a final judgment on May 26, 1989. R. 4:42-2. Part of the rationale for the order was contained in a letter decision dated January 17, 1989. The appeals also require reference to various administrative and legal proceedings surrounding the efforts by plaintiff-respondent/cross-appellant Lake Shore Estates, Inc. (Lake Shore) to develop an area of Denville characterized by steep and rugged topography sloping toward a lake.
The February 4, 1989 order as finally certified embodies prior interlocutory determinations made during the course of the long history of this case. Defendants-appellants/cross-respondents Denville Township Planning Board (Board), Mayor and Municipal Council of the Township of Denville, and the Township of Denville (collectively, "Denville") appeal from the determination by the trial judge that a so-called "steep slope" ordinance and a zoning ordinance which imposed two-acre minimum lot size in the zone occupied by the tract could not be applied by the Board in reviewing a preliminary subdivision proposal submitted by Lake Shore, and from the reversal of its denial of preliminary subdivision approval. Lake Shore cross-appeals from the determination to the extent that it affirmed the Board's denial of its proposal for cluster housing development. Under the February 4, 1989 order, Lake Shore can reapply for subdivision approval with further proofs.[1]
The principal issues raised are whether the trial judge correctly refused to apply the "time of decision" rule when he considered Denville's municipal ordinances, and whether the Board acted arbitrarily in denying Lake Shore's subdivision plan which called for cluster development.
Denville and the Board argue that the most recent subdivision application by Lake Shore constituted, and was understood *583 to be, a new application and should be subject to all ordinances and regulations. They also say that the lands in question properly require protection under the Freshwater Wetlands Protection Act. Lake Shore disputes these contentions and argues that we should reverse the denial of cluster development.
On August 19, 1976, Lake Shore applied to the Board for sketch plat approval of a proposed subdivision for its 170.8 acre tract. In November 1977, the Board approved Lake Shore's "sketch plat concept" for a proposed subdivision which then utilized an "open space," i.e., cluster, design.
In June 1979, Lake Shore submitted an application to the Board for preliminary major subdivision approval, predicated upon a cluster zone plan. One month later, Denville adopted a land use ordinance entitled "Development Regulations Within Areas of Steep Slopes." In January 1980, responding to the adoption of this ordinance, Lake Shore submitted a supplemental application to the Board which included a request for variance from the recently-adopted steep slope ordinance.
After several public hearings, the Board adopted a resolution on March 22, 1984, which denied both preliminary major subdivision approval and the variance request. Lake Shore filed a complaint in lieu of prerogative writs, seeking to reverse the Board's decision. It asserted that the steep slope ordinance was unconstitutional.
On February 7, 1985, a Law Division judge found that the Board's determination was procedurally flawed and remanded the matter to the Board with a direction that each Board member must review the transcripts of any meeting that the member failed to attend and that the Board then vote again regarding the subdivision proposal.
The Board again adopted a resolution which denied the application for preliminary major subdivision approval and the variance request. Lake Shore sought to reverse by filing another complaint in lieu of prerogative writs, asserting arbitrariness of the Board's decision and a declaration that the steep slope ordinance was unconstitutional.
*584 Following trial in February 1986, the present trial judge found that Denville's steep slope ordinance was unconstitutional and invalid. As Lake Shore's preliminary major subdivision application had been considered by the Board under that steep slope ordinance, the Board's denial of the subdivision proposal thereunder was deemed a nullity.
It was suggested that Lake Shore could submit a new application to the Board, to be considered on its merits. The oral decision was embodied in a judgment dated March 17, 1986, which provided that in the event Denville adopted a new ordinance, Lake Shore could, on motion, challenge the ordinance "or the effect such ordinance shall have on any future or pending application submitted by plaintiff for preliminary subdivision approval."
On August 6, 1986, Lake Shore once again applied to the Board for preliminary major subdivision approval. On the previous day, August 5, 1986, Denville had adopted a modified version of the former steep slope ordinance. On September 17, 1986, Lake Shore filed a complaint in lieu of prerogative writs challenging the constitutionality of Denville's 1986 steep slope ordinance.
In addition, while the subdivision application was pending, Denville adopted Ordinance No. 27-86 on October 7, 1986, rezoning the subject property and others into an R-1B-Residential District, which increased minimum lot size from 40,250 square feet to two acres. This drastically lessened the number of potentially buildable lots on Lake Shore's property.
Lake Shore moved, as permitted by the previous judgment dated March 17, 1986, seeking a determination that the new steep slope ordinance and the two-acre ordinance should not be applied to its pending preliminary major subdivision application. Lake Shore asserted that the "time of decision rule" should not prevail.
Following a hearing on Lake Shore's motion in March 1987, the trial judge rendered an opinion in which he recognized that *585 "perhaps the idea of requiring large lots in place of smaller lots is a sensible way to deal with steep slopes" and "it might very well be sensible zoning to upgrade lot sizes in areas where there are steep slopes." He accepted as correct for purposes of the motion that the zoning changes were not just applicable to Lake Shore's property but to large areas throughout the municipality, and represented "a general effort ... to head in the direction of larger lot size requirements in areas where there are critically steep slopes." No consideration was given to the constitutionality of the two ordinances.
The trial judge also ruled in that determination, later embodied in a judgment of March 28, 1987, that the Board had an inherent authority, even without ordinance, to review any application in terms of sound engineering principles related to steep slopes. Nonetheless, he concluded that neither the steep slope ordinance nor the two-acre zoning ordinance could be applied to "Plaintiff's pending subdivision application No. MP-86-23 and accompanying variance applications...."
The trial judge reasoned that the effect of the amendments unfairly burdened the plaintiff and rendered "nugatory much of the judicial time and effort which has been spent on this case." He held that "the plaintiff should not have to cope with changing rules which are, in part at least, a response to successful litigation brought by the plaintiff." In so holding, he relied on what he deemed to be the "broad spirit and principle" of cases such as Kruvant v. Mayor & Council Tp. of Cedar Grove, 82 N.J. 435, 414 A.2d 9 (1980); Oakwood at Madison, Inc. v. Township of Madison, 72 N.J. 481, 371 A.2d 1192 (1977); and Urban Farms, Inc. v. Franklin Lakes, 179 N.J. Super. 203, 431 A.2d 163 (App.Div.), certif. denied, 87 N.J. 428, 434 A.2d 1099 (1981).
This interpretation of the special equities exception to the time of decision rule was determinative of the March 1987 proceedings, and was restated and incorporated in the rationale of the judgment which we address today. In light of its *586 importance, we digress briefly to recognize that, in so doing, the trial judge incorrectly extended the special equities exception far beyond its limited reach. See, e.g., Urban Farms, supra, 179 N.J. Super. at 220-221, 431 A.2d 163; Timber Properties, Inc. v. Chester Tp., 205 N.J. Super. 273, 278-282, 500 A.2d 757 (Law Div. 1984). We note that there has not been, nor does the record support, a finding that Denville arbitrarily or capriciously changed zoning ordinances to frustrate the express grant of a use or subdivision approval by a court. To the contrary, in March 1987 the trial judge recognized that sound reasons could be stated for two-acre zoning and for steep slope zoning conditions in the area Lake Shore proposed to develop. We will return to the time of decision issue upon completing the chronology of events.
The March 1987 order required that the Board consider Lake Shore's application for variance and subdivision approval, without applying either the steep slope or two-acre zoning ordinance. Lake Shore proceeded with an application for subdivision approval.
By letter dated May 11, 1987, the Board's attorney advised Lake Shore that a cluster development plan was not a "permitted concept as of right" and that its submitted subdivision plan, which employed a cluster concept, must be revised in order for the plan to be deemed complete for Board review. Thereafter, Lake Shore requested a hearing before the Board regarding the propriety of cluster zoning on the subject property. On October 19, 1987, following two public hearings, the Board adopted a resolution declaring Lake Shore's proposal to be incomplete and denied the request for cluster zoning.
Briefly summarized, the Board's resolution decided that cluster zoning was not the best method of developing the tract and referred to the following shortcomings in the Lake Shore application: (1) that the single road in and out of the tract (which empties into Rockaway Borough) presented a safety and fire hazard, particularly to residences in the interior of the *587 subdivision; (2) that the plan lacked any sewer or water capacity information; (3) that the plan lacked any information respecting the lake, its dam, or a wetlands problem which the Board's consulting engineers said was raised by Army Corps of Engineers' maps; and (4) that the municipal engineer had presented seven itemized pages detailing problems or omissions in the submission. The Board's resolution also noted that the application was a new one, and differed from the prior application, particularly inasmuch as 28 acres which had been included in the prior application were removed from the 1987 application.
Thereafter, on December 7, 1987, Lake Shore filed the present action in lieu of prerogative writs in the Superior Court, Law Division, Morris County, in an effort to reverse the Board's decision regarding the use of cluster zoning. The Board moved for summary judgment and dismissal, asserting that the Board had no choice but to deny an incomplete subdivision application.
The trial judge denied the motion for summary judgment, instead granting affirmative relief summarily to Lake Shore. He entered an order which vacated the Board's denial of the subdivision application, and remanded Lake Shore's application to the Board for consideration on the issue of whether cluster zoning under a section of the Denville Land Use Ordinance was "appropriate for plaintiff's property." It was also summarily ordered that Lake Shore's application be deemed complete for the purposes of The Board's review of the application for subdivision approval. The order restated the previous rulings which barred the Board from enforcing Denville's 1986 "steep slope" and two-acre zoning ordinances otherwise applicable in the zone. The trial court did not consider, or at least did not rule upon, the contention vigorously pressed by the Board's attorney that it had not merely reconsidered an application made years ago, but a new application for a tract with 28 acres less than the earlier one.
*588 This remand order provided for a hearing "on the issue of whether cluster zoning pursuant to Section 19-5.1104(d) of the Denville Land Use Ordinance is appropriate for Plaintiff's property." The Board held hearings in which competent experts presented by Lake Shore and the Board differed sharply as to the soundness of cluster, as contrasted to large lot, development approaches for the tract.
On June 23, 1988, the Board adopted a resolution which denied the cluster zoning preliminary major subdivision application. Following oral argument, the trial judge concluded that the Board's determination respecting cluster zoning was supported by the evidence and was not arbitrary, capricious or unreasonable. However, the court gave leave to Lake Shore to present yet another development proposal to the Board, still immune from compliance with Denville's 1986 steep slope and two-acre zoning ordinances. The implementing order filed on February 4, 1989 was certified as a final judgment on May 26, 1989.
Among the legislative purposes expressed in the Municipal Land Use Law are the following:
a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in the manner which will promote the public health, safety, morals, and general welfare;
b. To secure safety from fire, flood, panic and other natural and man-made disasters;
c. To provide adequate light, air and open space;
* * * * * * * *
e. To promote the establishment of appropriate population densities ... that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment;
* * * * * * * *
g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements ...;
* * * * * * * *

*589 j. To ... prevent ... degradation of the environment through improper use of land.
N.J.S.A. 40:55D-2.
The Supreme Court, while recognizing the salutary judicial, executive and legislative efforts to promote construction of multi-family housing, has stated that, "[t]here has been no fundamental change, beyond the holding in Mount Laurel itself, in the statutory and constitutional policy of this State to vest basic local zoning policy in local legislative officials. N.J. Const. 1947, Art. 4 § 6, Par. 2; cf. Art. 4 § 7, Par. 11." Pascack Ass'n, Ltd. v. Mayor & Coun., Washington Tp., 74 N.J. 470, 483, 379 A.2d 6 (1977). As a general rule, on direct review of the actions of those charged with making and enforcing local zoning policy a court should apply the statute in effect at the time of its decision, at least when the legislators intended that its modification be retroactive to pending cases. "The purpose of the principle is to effectuate the current policy declared by the legislative body  a policy which presumably is in the public interest." Kruvant, supra, 82 N.J. at 440, 414 A.2d 9.
In Urban Farms, we made clear, as did the Kruvant Court, that a zoning ordinance amendment responsive to a court's judgment is not automatically entitled to a time of decision effect. We pointed out that it "... should not be accorded such effect where doing so would undermine existing special equities without accomplishing any offsetting service to the public interest in the zoning sense," and that "considerations of patent advantage to the public have always constituted the jurisprudential core of that doctrine." Id. 179 N.J. Super. at 217-218, 431 A.2d 163. Judge Pressler articulated in Urban Farms the synthesizing theme of the time of decision cases:
In each of them the retroactivity principle was applied either to permit a municipality ... to rectify its zoning ordinance in order to perfect a legislative policy decision therein expressed by it but imperfectly so, or to permit a municipality to give initial legislative consideration to serious and substantial land-use planning concerns theretofore unaddressed by its ordinance.... When these concerns are involved, the public interest clearly justifies protection *590 by way of the municipal opportunity to amend its ordinance after and in response to an adverse judgment.
Id. at 220, 431 A.2d 163.
We also recognized in Urban Farms the need for
a weighing of such factors as the nature, extent and degree of the public interest to be served by the ordinance amendment on the one hand and, on the other hand, the nature, extent and degree of the developer's reliance on the state of the ordinance under which he has proceeded, the extent to which his undertaking has been at any point approved or encouraged by official municipal action, and the extent to which, under the circumstances and as objectively determined, he should have been aware that the municipality would be likely to change the ordinance prior to actual commencement of construction. These are the factors constituting the developer's special equities, and if they outweigh the public interest concerns, they should also operate to bar postjudgment retroactivity of a zoning ordinance amendment.
Id. at 221-222, 431 A.2d 163. See also Timber Properties, supra, 205 N.J. Super. at 277-282, 500 A.2d 757, discussing the "vested rights" doctrine, its equitable underpinnings and exceptions.
Here, there was no vesting of rights giving rise to a justified reliance. Neither was there any basis for a justifiable reliance upon past municipal approvals. Except for an initial sketch plat approval long before its first application for subdivision approval, Lake Shore has not had its application approved or encouraged by the Board, despite the changing makeup of the Board over the years. Lake Shore was well aware that Denville would adopt a revised steep slope ordinance after the original steep slope ordinance was declared unconstitutional by the trial judge. Indeed, the trial judge recognized that possibility before it occurred.
The local legislators have consistently recognized that the steep topographic area of Denville, which is the subject of Lake Shore's persistent efforts to develop, warrants careful zoning control in the public interest. Since its adoption of the initial steep slope ordinance, even though it was struck down, Denville has made clear its desire to address the special environmental and other zoning problems which arise in connection with intensive development of this area of its community.
*591 Experts have been retained and consulted by both parties, and their opinions have varied. However, as the trial judge correctly recognized, the environmental and related concerns in this case are legitimate and the two 1986 ordinances (the validity of which has never been adjudicated) were addressed to Denville's perception of the public interest.
We are satisfied that neither the Denville Municipal Council nor its Planning Board have engaged in the kind of contumacious subversion of an existing order contemplated by the Supreme Court in Kruvant as a basis for exception to the time of decision rule. There is substantial support in the record for the legitimacy of consistent municipal efforts to address the problems of the steep slope area.
On the other side of the balance, we note that most of the expenditures incurred by Lake Shore for planning and design work have been in connection with its preparations for cluster development of the site. However, there was never an entitlement as of right to cluster development whatever zoning ordinance was deemed applicable. Thus, to the extent based upon such cluster development, those expenditures should not have been weighed when balancing the developer's burdens against the public interest for the purpose of time of decision analysis. Moreover, the property of Lake Shore is not being zoned into inutility. There simply may not be an ability to achieve the same level of profitable development intensity which it would prefer.
We hold that the trial judge erred in making an Urban Farms analysis which prohibited the Board from requiring Lake Shore to comply with the 1986 steep slope and two-acre zoning ordinances. Any further subdivision applications by Lake Shore must be made in compliance with those ordinances. In so holding, we do not imply that we have judicially reviewed and sanctioned the ordinances. We hold only that they are presumptively valid and that the Board should have been permitted *592 to apply those ordinances to the applications made by Lake Shore since 1986.
An additional reason exists for reversing the judgment of the trial judge in this matter. We agree with the Board that so many significant questions, including the wetlands issue, were left unanswered in the Lake Shore application that it was not truly complete, even with the substantial latitude that we would ordinarily give in evaluating completeness. See, e.g., Field v. Franklin Tp., 190 N.J. Super. 326, 332-333, 463 A.2d 391 (App.Div. 1983). Moreover, Lake Shore appears to have submitted a substantially new application, because 28 less acres were contained in the last submission. The 1986 ordinances would thus apply.
Although Lake Shore's cross-appeal from the ruling of the trial judge which affirmed the Board's denial of its cluster development proposal is mooted by our holding in Denville's appeal, we have nonetheless carefully considered the record of the hearings before the Board, and are satisfied that this finding of the trial judge was supported by the evidence of record, as was the decision of the Board, and that the issues of law raised on the cluster issue are clearly without merit. R. 2:11-3(e)(1)(A), (E); Allen v. Hopewell Tp. Zoning Bd., 227 N.J. Super. 574, 581, 548 A.2d 220 (App.Div.), certif. denied, 113 N.J. 655, 552 A.2d 177 (1988); Charlie Brown of Chatham v. Board of Adjustment, 202 N.J. Super. 312, 321, 495 A.2d 119 (App.Div. 1985).

CONCLUSION
The judgment under appeal is reversed. The cluster issue is moot. Lake Shore may, if it so elects, present a new application subject to the ordinances of the Township of Denville.
NOTES
[1] This form of judgment may have been utilized to foreclose a later argument, such as the Board and Denville have made respecting the 1987 application, that the new application by Lake Shore is subject to all existing ordinances even without invocation of the time of decision rule.