972 A.2d 1155 (2009)
408 N.J. Super. 1
Elizabeth SCHMIDHAUSLER, Joseph Sharples and Shirley Sharples, Lisa Ann Wade, John Ciecura and Marion Ciecura and Hilary Ayers-Kavtaradze, Plaintiffs-Appellants,
v.
PLANNING BOARD OF the BOROUGH OF LAKE COMO and Ronald Glynn, Defendants-Respondents.
No. A-5932-07T3.
Superior Court of New Jersey, Appellate Division.
Submitted April 29, 2009.
Decided May 29, 2009.
*1157 Michael A. Irene, Jr., Long Branch, for appellants.
Adam Schneider, East Brunswick, for respondent, Planning Board of the Borough of Lake Como.
Giordano, Halleran & Ciesla, Red Bank, for respondent, Ronald Glynn (Michael A. Bruno, of counsel; Craig M. Gianetti, on the brief).
Before Judges STERN, LYONS and ESPINOSA.
The opinion of the court was delivered by
LYONS, J.A.D.
Plaintiffs, Elizabeth Schmidhausler, Joseph and Shirley Sharples, Lisa Ann Wade, John and Marion Ciecura, and Hilary Ayers-Kavtaradze, appeal a July 14, 2008, order of the trial court affirming the resolution of defendant, Planning Board of the Borough of Lake Como (the Board), granting subdivision approval with variance relief to the co-defendant, Ronald Glynn, (Glynn) to subdivide his oversized lot in the Borough of Lake Como into three single-family lots. Plaintiffs are owners of adjoining and neighboring lots in Lake Como. The following factual and procedural history is relevant to our consideration of the issues advanced on appeal.
Glynn is the owner of an irregularly shaped lot, roughly 264 feet by 100 feet, in the RAA single-family residential district of Lake Como. The property, commonly known as 13 Ripley Lane, is located at the intersection of Fernwood Road and Ripley Lane, and is designated as Block 19, Lot 6, on the municipal tax map. The western portion of the lot borders on Fernwood Road, a public street. The northern portion of the lot abuts the neighbors' lots and a forty-foot right-of-way, known as Briarwood Terrace. The eastern border of the lot abuts a neighbor's lot. The southern border of the lot fronts on Ripley Lane, an unpaved serpentine private road that goes from Fernwood Road past Glynn's lot and ten others to North Boulevard, a public street. Glynn sought to have his lot subdivided into three lots, to be designated 6.01, 6.02 and 6.03.
At a hearing conducted by the Board on December 13, 2004, Glynn applied for the subdivision approval and asked for variance relief from the lot depth requirements with respect to proposed lots 6.02 and 6.03.[1] Relief was also sought for those lots because they would abut an unimproved street. See N.J.S.A. 40:55D-35 and N.J.S.A. 40:55D-36. At the time of the December 13, 2004, hearing, the Board and Glynn were under the impression that Ripley Lane was an unimproved public street. During the hearing, however, an *1158 objector raised the issue as to whether Ripley Lane was, in fact, a private road and not a public street. At the hearing, Glynn's architect testified concerning the proposed site plan, as well as the configuration and size of the particular dwellings intended to be constructed on the three lots. No vote was taken on the application that evening and the hearing was adjourned until the February 2005 meeting.
Following the December 2004 meeting, the Board and Glynn ascertained that Ripley Lane was, in fact, a private road. Glynn then had a title search conducted with respect to the ownership of Ripley Lane, and the February 2005 meeting on Glynn's application was adjourned without a date.
In August 2005, the Board advised Glynn that his application was incomplete because it required an updated and complete survey, presumably to reflect that Ripley Lane was actually a private road, whereas the initial application was premised on Ripley Lane being a public street. It is unclear from the record whether Glynn filed a new or amended application at this time. It appears he did not. In December 2005, the Board advised Glynn that his application was now complete and new notices were sent out.
A hearing was held on January 9, 2006. At that time, Glynn's planner and engineer testified. The testimony recognized that the application had changed somewhat in that Ripley Lane was, in fact, a private street. The subdivision remained the central focus. The lot depth variances were still required. An additional variance was now needed pursuant to N.J.S.A. 40:55D-35, because two of the proposed lots, 6.02 and 6.03, would not front on a public street. No decision was rendered on the application and it was continued until the Board's next meeting.
Following the January 2006 meeting, Glynn purchased a portion of Ripley Lane by receiving quit claim deeds from the various heirs and beneficiaries of William C. Ripley and Jane R. Lord. Based upon Glynn's ownership of almost all of Ripley Lane, he submitted an "updated" application in March 2006. The subdivision plan changed somewhat because Glynn now intended to subdivide the existing lot 6 as follows: lot 6.01 would front on Fernwood Road; lot 6.02 would be a "flag" lot and the "flagstaff" portion of the lot would be the existing portion of Ripley Lane that fronts on the proposed lots 6.01 and 6.02 out to Fernwood Road; lot 6.03 would also be a "flag" lot and the "flagstaff" on that lot would be comprised of Ripley Lane running out to North Boulevard. Because of the acquisition of Ripley Lane by Glynn, the lot depth variances were no longer required. But a variance was now necessary for lot frontage as to proposed lots 6.02 and 6.03 because the ordinance required a sixty-foot frontage on a public street and the width of Ripley Lane on the public streets of Fernwood Road and North Boulevard was only approximately twenty feet. In addition, Glynn sought a de minimis exception from the residential site improvement standard which requires a two-year storm event be reduced by fifty percent. Glynn proposed a thirty percent reduction and to connect any drainage overflow to the existing drainage pipe running through the property. This amended application was then heard by the Board on April 10, 2006.
At this meeting, Glynn's engineer and planner again testified and were cross-examined by plaintiffs' then attorney. Plaintiffs' attorney noted that "this entire application changed this evening," referring to the acquisition by Glynn of Ripley Lane. He asked, therefore, that he be given an opportunity to put on witnesses regarding the amended application at the next meeting.
*1159 Glynn opposed that and noted that he was seeking to place conforming houses on what would be conforming lots. The Board was willing to grant the adjournment so that the objectors could place their objections on the record and have their engineer testify. The hearing was then adjourned until May 8, 2006.
At the May 8, 2006, hearing, Glynn's engineer and planner testified, as well as the objectors' engineer and planner. Through their attorney, the objectors argued, in addition to other concerns, that Glynn's proposed drainage system would fail. At the conclusion of the May 8, 2006, hearing, the application was approved by a four-to-three vote of the Board. A resolution was signed on June 12, 2006, memorializing that vote and the Board's findings and conclusions. The resolution noted that the application had been heard by the Board on December 13, 2004, January 9, 2006, February 13, 2006, April 10, 2006, and May 8, 2006.[2]
On July 19, 2006, plaintiffs filed a complaint in lieu of prerogative writs seeking to set aside the Board's approval of Glynn's application. The matter was heard by the trial judge on November 28, 2007. On January 2, 2008, he ordered that the matter be remanded to the Board so that it could supplement the findings and conclusions that supported its determination.
On February 11, 2008, the supplemental resolution was voted on, signed, and resubmitted to the court. The court heard argument on April 4, 2008. The court affirmed the Board's decision and set forth its reasons in a written opinion dated June 26, 2008. On July 14, 2008, the court signed an order affirming the Board's action regarding Glynn's application. This appeal ensued.
On appeal, plaintiffs present the following arguments for our consideration:
POINT I
ONE OF THE BOARD MEMBERS WHO VOTED TO APPROVE THIS APPLICATION WAS LEGALLY INELIGIBLE TO VOTE; STRIKING HIS VOTE RESULTS IN A TIE VOTE, WHICH IN TURN CONSTITUTES A STATUTORY DENIAL OF THE APPLICATION.
POINT II
THE PURPORTED ACQUISITION BY THE APPLICANT OF PART OF RIPLEY LANE IS UNLAWFUL, SAME SHOULD BE SET ASIDE AND DECLARED TO BE NULL AND VOID, AND THE APPROVAL HERE AT ISSUE SHOULD BE REVERSED.
POINT III
THE RESOLUTION ADOPTED BY THE BOARD IN THIS MATTER LACKS FINDINGS OF FACT, IS MERELY A NET CONCLUSION, AND FAILS TO MEET THE REQUIREMENTS OF THE MLUL AND APPLICABLE CASE LAW; THE NEW RESOLUTION ADOPTED POST-REMAND DOES NOT REMEDY SAME.
POINT IV
THE ACTIONS OF THE BOARD IN THIS MATTER WERE ARBITRARY, CAPRICIOUS AND UNREASONABLE, AND SAME SHOULD THEREFORE BE REVERSED.
Plaintiffs argue that one of the Board members who voted to approve Glynn's application was legally ineligible to vote, pursuant to N.J.S.A. 40:55D-10.2, because he had missed the December 13, 2004, meeting, and neither read the transcript *1160 nor listened to the tape of the meeting. N.J.S.A. 40:55D-10.2, provides that:
[a] member of a municipal agency who was absent for one or more of the meetings at which a hearing was held . . ., shall be eligible to vote on the matter for which the hearing was conducted, notwithstanding his absence from one or more of the meetings; provided, however, that such board member has available to him the transcript or recording of all of the hearing from which he was absent . . . and certifies in writing to the board that he has read such transcript and listened to such recording.
Plaintiffs argue that due to this member's ineligibility, his vote should be stricken. As a result, plaintiffs argue that the vote of the Board would then be a three-to-three tie which, pursuant to statute, constitutes a statutory denial of the application.
Defendants argue that the December 13, 2004, meeting, at which the one member was not present, was a meeting that did not "count" because the Board lacked jurisdiction because the application was incomplete at the time. Defendants claim that the application was incomplete because all parties at the December 13, 2004, hearing assumed that Ripley Lane was a public road. The trial court agreed, finding that the Board had no jurisdiction over the application in December 2004 because the application was incomplete. The court also found that the disputed hearing was irrelevant to the merits of the subdivision because, in the court's view, the testimony of the architect was immaterial to the matter. The trial court, therefore, rejected plaintiffs' argument that the one member who was absent from the December 2004 meeting was disqualified from voting and upheld the Board's decision.
We do not agree with the trial court's analysis. The June 12, 2006, approval resolution clearly stated that the Board relied on the December hearing in considering Glynn's application. The testimony of the architect was directed toward the site plan, which was necessary for the subdivision approval. "The primary purpose of . . . subdivision review is to insure that an applicant's plans for development conform to the standards outlined in the municipal land use ordinances." David J. Frizell, 36 N.J. Practice: Land Use Law § 17.8 at 446 (3d ed. 2005). The architect's review of the proposed site plan would be relevant and material to the application. See Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 233, 645 A.2d 89 (1994). We also note that the architect's testimony was referred to throughout the remaining hearings.
We understand how one could argue that, beginning in January 2006, there was a new application because Ripley Lane was then revealed to be a private road. In fact, a number of times at the April 10, 2006, meeting, the objectors' attorney complained that there was, in fact, a new application. However, it was not until after the January 2006 meeting that Glynn purchased a portion of Ripley lane and filed an "updated" application to reflect the creation of two "flag" lots and his purchase of Ripley Lane. Yet, defendants do not argue that the January 2006 meeting did not "count."
In Lake Shore Estates, Inc. v. Denville Twp. Planning Bd., 255 N.J.Super. 580, 592, 605 A.2d 1106 (App.Div. 1991), aff'd, 127 N.J. 394, 605 A.2d 1073 (1992), we noted that if an applicant appears to have submitted a substantially new application, a board and a court could treat it as such for purposes of the time of decision rule. See William M. Cox, et al., New Jersey Zoning and Land Use Administration § 25.4 at 582 (2009) ("[w]here an amended application is very substantially different from the original it may be *1161 treated by the board and any reviewing court as a new application."). But generally, a board retains jurisdiction over a subdivision application until a decision has been rendered and an appeal filed in the Law Division. Gandolfi v. Town of Hammonton, 367 N.J.Super. 527, 548, 843 A.2d 1175 (App.Div.2004). Moreover, this case is distinguishable from Lake Shore Estates, Inc., supra, 255 N.J.Super. at 580, 605 A.2d 1106. In the Lake Shore case, for the purpose of the time of decision rule, we found that a developer "appear[ed] to have submitted a substantially new application" based on the fact that the application was for property that was twenty-eight acres more than the previous submission. Id. at 592, 605 A.2d 1106. That final application had also been submitted after the previous ones had been denied by the board, and those denials had been upheld by the trial court. Id. at 584, 605 A.2d 1106. That did not occur here. The central focus of this entire case has been the three-lot subdivision of lot 6. That did not change throughout the matter. We do not find that in this case there was a substantially new application submitted during the course of the hearings.
Nor do we find that, at the December 2004 hearing, the Board lacked jurisdiction on the basis that Glynn's application was incomplete.[3] Nothing in the record indicates Glynn had failed to comply with the procedural requirements of the Borough's application ordinance or that the application was not complete at the December 2004 hearing. The then mistaken assumption that Ripley Lane was a public street, and Glynn's later acquisition of it, did not retroactively cause the application to be incomplete. We note N.J.S.A. 40:55D-10.3 states in pertinent part:
[t]he municipal agency may subsequently require correction of any information found to be in error and submission of additional information not specified in the ordinance or any revisions in the accompanying documents, as are reasonably necessary to make an informed decision as to whether the requirements necessary for approval of the application for development have been met. The application shall not be deemed incomplete for lack of any such additional information or any revisions in the accompanying documents so required by the municipal agency.
The application, therefore, was complete in December 2004. We also find that the subsequent developments in this case did not retroactively deprive the Board of jurisdiction over Glynn's application at the December 2004 hearing.
We, therefore, disagree with the trial court's conclusion that the Board lacked jurisdiction over the matter at the December 2004 hearing because the application was incomplete, and, therefore, the missing Board member was eligible to vote on the application without certifying that he had read the transcript or listened to the tape.
While we disagree with the trial court's determination of one Board member's eligibility, we also disagree with plaintiffs' assertion that the remedy for a subdivision approval and variance based in part on the vote of a Board member who was ineligible to vote because of his or her failure to comply with N.J.S.A. 40:55D-10.2, is the striking of his vote, which in this case would result in a tie vote and, plaintiffs argue, an automatic denial of the application. The eligibility statute, N.J.S.A. 40:55D-10.2, does not set forth *1162 either a specific remedy or the consequences when the statute is violated.
We note that contrary to plaintiffs' suggestion that an ineligible Board member's vote merely needs to be subtracted from the total of the eligible votes counted, the participation and vote by a member with a disqualifying conflict of interest generally voids the entire proceedings and a new hearing is required. Haggerty v. Red Bank Borough Zoning Bd. of Adjustment, 385 N.J.Super. 501, 517, 897 A.2d 1094 (App.Div.2006); Care of Tenafly, Inc. v. Tenafly Zoning Bd. of Adjustment, 307 N.J.Super. 362, 366, 704 A.2d 1032 (App. Div.), certif. denied, 154 N.J. 609, 713 A.2d 500 (1998). But, there is no contention in this case that the one Board member was biased or had a conflict of interest which would permanently prevent him from voting in this matter. Instead, he simply failed to read the transcripts or listen to the tapes of one hearing.
In reviewing a statute, the judicial function is to effectuate the legislative goal to the extent permitted by statute. Guttenberg Savings & Loan Assoc. v. Rivera, 171 N.J.Super. 418, 423, 409 A.2d 816 (App.Div.1979), rev'd on other grounds, 85 N.J. 617, 428 A.2d 1289 (1981). In this case, the legislative intent is clear. It is to make sure that those who vote on Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 -129, applications are fully informed of what transpired during all the hearings on that application. Rather than denying the application outright or putting all of the parties to the cost and expense of an entire new hearing, a simple logical remedy is to remand the matter to the Board and have all current members deliberate and revote, with those who had not attended one or all of the hearings in this matter review the transcript of any meeting or meetings that they may have missed, certify they have done so, and then have them deliberate and vote as well.
We note that this issue also arose in Lake Shore Estates, supra, 255 N.J.Super. at 583, 605 A.2d 1106, where on the plaintiff's first complaint,
a Law Division judge found that the Board's determination was procedurally flawed and remanded the matter to the Board with a direction that each Board member must review the transcripts of any meeting that the member failed to attend and that the Board then vote again regarding the subdivision proposal.
The failure of the one member to read the transcript or listen to the recording of the one hearing at issue and certify to having done so was a procedural flaw here as well. That same remedy, as recognized in Lake Shore Estates, should apply. The matter shall be remanded for the current Board members to deliberate and revote, with those who have not done so, reading the transcript or listening to the tape of any meeting or meetings they may have missed, providing their certification, and then deliberating and voting on the application as well.
We note the argument that the tapes for the hearing at issue contained gaps. That does not render them incompetent as evidence of the first day's hearing. Absent a showing of specific prejudice, the mere existence of recorded gaps in the tapes or transcription of the Board's proceedings is an insufficient basis for reversal. Carteret Bd. of Educ. v. Radwan, 347 N.J.Super. 451, 454-55, 790 A.2d 248 (App.Div.), certif. denied, 174 N.J. 38, 803 A.2d 634 (2002); see also State v. Paduani, 307 N.J.Super. 134, 143, 704 A.2d 582 (App.Div.), certif. denied, 153 N.J. 216, 708 A.2d 67 (1998) (holding that a reviewing court may decide a case with inaudible transcripts if the missing portions are not critical to a fair disposition). There has been no showing that the gaps in the tape *1163 or transcript pertaining to evidence that was presented on December 13, 2004, was critical to the decisions before the Board in this case.
With respect to the remaining arguments of plaintiffs, we find that, after reviewing the record and arguments of counsel, they are unavailing and unpersuasive. Therefore, we affirm the remaining provisions of the order of the trial court substantially for the reasons set forth in the trial judge's opinion. We make the following observations in addition to those set forth by the trial judge.
Plaintiffs argue that Glynn's acquisition of part of Ripley Lane was an unlawful subdivision. N.J.S.A. 40:55D-7 defines a subdivision as "the division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development." That did not occur here. The facts set forth in the title search in particular clearly demonstrate that there was no division of Ripley Lane by virtue of Glynn's acquisition from the Ripley heirs of their interest in Ripley Lane. Plaintiffs' premise was incorrect at the outset. The mere fact that the municipality incorrectly listed Ripley Lane as a public street does not make it one tract. The title search clearly indicates that it was not. What Glynn did was purchase the interest in the existing separate lots from the then-owners, and there was no further division of the existing parcels. Hence, there was no unlawful subdivision.
With respect to plaintiffs' argument that the June 12, 2006, resolution lacked the appropriate findings of facts and was merely a net conclusion, thereby failing to meet the MLUL, we find that lacking as well. Any deficiencies in that resolution were cured in the February 11, 2008, supplemental resolution as detailed by the trial judge in his opinion on this point. The argument that the new resolution was adopted without extensive debate and is therefore flawed is not efficacious. There is no obligation for a dialogue among the members on voting for or against the resolution. The text of the supplemental resolution adequately speaks for itself.
Lastly, we find that the Board's approval of the Glynn application was not arbitrary, capricious or unreasonable. The trial court outlined in detail the reasons for that and, as we have well noted, our scope of review of such matters is limited. In reviewing the decision to grant the variance, courts typically recognize that municipal bodies, "because of their peculiar knowledge of local conditions, must be allowed wide latitude in the exercise of their delegated discretion." Booth v. Bd. of Adjustment of Rockaway Twp., 50 N.J. 302, 306, 234 A.2d 681 (1967).
A local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of a clear abuse of discretion by the public agencies involved.
[Kramer v. Sea Girt Bd. of Adjustment, 45 N.J. 268, 296-97, 212 A.2d 153 (1965).]
We are satisfied that the findings of fact and conclusions of law set forth by the Board and, as discussed by the trial judge in his written opinion, that the required elements for the variances to be granted pursuant to N.J.S.A. 40:55D-70(c)(1), as well as N.J.S.A. 40:55D-70(c)(2), were met.
Consequently, we affirm the trial judge's order, except to reverse his finding on one member's eligibility to vote and to remand the matter to the trial judge so that it can be further remanded to the Board. The Board is to be instructed to have its current members revote with those who were *1164 absent from any hearings read the transcripts or listen to the tapes of those meetings, certify they have done so, and then deliberate and vote at the next regularly scheduled meeting of the Board on Glynn's application as well. We do not retain jurisdiction.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] There is nothing in the record to indicate that Glynn's application was not "complete" at that time. See N.J.S.A. 40:55D-10.3.
[2] The parties agree that there was no hearing on February 13, 2006, and, therefore, it was an error to include that date in the resolution.
[3] We need not and do not address the issue of whether an incomplete application deprives a planning board of jurisdiction.